PATRICK D. ROBBINS (CABN 152288)
Attorney for the United States

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

CHARLES F. BISESTO (CABN 271353)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6405
    FAX: (415) 436-7234
    Charles.Bisesto@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CASE NO. CR 22-391 WHO |
| Plaintiff, ) | UNITED STATES' SENTENCING MEMORANDUM |
| v. ) | |
| EDIN ISMAEL RODRIGUEZ-CARTAGENA, ) | Date: August 8, 2024<br>Time: 1:30 p.m.<br>The Honorable William H. Orrick |
| Defendant. ) | |

### I.   INTRODUCTION

In the beginning of 2022, the Drug Enforcement Administration ("DEA") began investigating an identified drug trafficking organization ("Organization") that was believed to operate in the Bay Area. While intercepting phone calls over a known drug dealer's phone line, agents were able to identify the defendant, Edin Ismael Rodriguez-Cartagena ("the defendant") and his co-defendant, Darwin Mancia-Murillo ("Mancia-Murillo"), as leaders who managed the drug sales activities of the Organization. In May of 2022, the DEA received judicial authorization to intercept electronic and wire communications over Mancia-Murillo's phone line. These interceptions uncovered the inner workings of this Organization, including the defendant's role at the top.

UNITED STATES' SENTENCING MEMO.       1
CR 22-391 WHO

During the course of the wire intercepts, the defendant was intercepted discussing drug trafficking activities with Mancia-Murillo including having conversations about trafficking large quantities of fentanyl, payment for drugs and obtaining drugs from a stash house. During the arrest of the defendant and his associates on July 27, 2024, the DEA uncovered kilograms of colored fentanyl inside the aforementioned stash house, confirming the defendant's involvement in a large scale drug distribution business.

On July 25, 2022, the government filed a criminal Complaint charging the defendant with violations of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(C) and 21 U.S.C. § 843(b). *See* Dkt. 1. The charges were alleged to have occurred on or about May through June of 2022. On July 28, 2022, the defendant had his initial appearance before Magistrate Judge Alex G. Tse. *See* Dkt. 5. On that date, the defendant was remanded to the custody of the United States Marshal Service. *Id*.

On October 4, 2022, a four count Indictment was filed charging the defendant along with Darwin Mancia-Murillo, Abraham Antonio Cruz-Arteaga ("Cruz-Arteaga"), and Angel David Rodriguez ("David Rodriguez"). *See* Dkt. 34. The Indictment charged the defendant in Count One (1) with a violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(C) – Conspiracy to Distribute and Possess with Intent to Distribute Fentanyl. The defendant was also charged in Count Two (2) with a violation of 21 U.S.C. § 843(b) – Unlawful Use of a Communications Facility. *Id*.

On October 18, 2022, the defendant was arraigned on the Indictment and entered a plea of not guilty. *See* Dkt. 44. The matter was assigned to District Court Judge William H. Orrick for all purposes. On May 16, 2024, pursuant to a plea agreement with the government, the defendant pled guilty to Count One. *See* Dkts. 129, 132. The plea agreement was entered pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure. The matter was set for a sentencing date of August 8, 2024.

**II.    FACTS**

As far back as October of 2021, the defendant was known to Bay Area law enforcement entities. On October 13, 2021, after identifying the defendant in a narcotics wiretap investigation, the San Francisco Police Department (SFPD) executed a search warrant at the defendant's residence on 38th Avenue in Oakland. PSR ¶ 45. The defendant was arrested as he exited the home and was found in

UNITED STATES' SENTENCING MEMO.        2
CR 22-391 WHO

possession of a loaded 9mm magazine, $4,851 cash and a cell phone. *Id*. A 9mm "ghost gun" pistol was found underneath the driver's seat of his car. *Id*. Inside a common area of the home, officers seized 6.16 pounds of suspected fentanyl, 45.5 grams of suspected methamphetamine, 7.6 grams of suspected cocaine, 7.3 grams of suspected heroin, two digital scales with white residue and several notebooks appearing to be "pay/owe sheets." *Id*. The defendant was charged by the Alameda County District Attorney's Office and drug trafficking charges related to that incident remain pending. *Id*.

Despite being released by state court for that conduct, the defendant continued to engage in drug trafficking activities. In fact, in February of 2022, just months after his arrest by SFPD, the defendant was intercepted conversing with Hever Suarez about distributing fentanyl. PSR ¶ 11. In one of those phone calls, the defendant was heard discussing housing workers in the East Bay, presumably referring to street level drug dealers who would be distributing the defendant's product. PSR ¶ 12.

Then, when the DEA began intercepting phone calls over Mancia-Murillo's identified phone line, the defendant was intercepted speaking with Mancia-Murillo about fentanyl distribution. PSR ¶ 11. On May 16, 2022, for example, the defendant was intercepted telling Mancia-Murillo to prepare 45 to 50 ounces of fentanyl for an upcoming sale to a third party. PSR ¶ 12. The interceptions revealed that "preparing" the drugs entailed diluting the drugs with a cutting agent to enhance the quantity of the fentanyl that would later be distributed on the street. The intercepted phone calls also included the defendant directing Mancia-Murillo to collect drug payments and asking him to obtain drugs from their stash house. PSR ¶ 13.

The defendant was also intercepted discussing obtaining a new "machine" for his and Mancia-Murillo's operations. *Id*. Agents believe the term "machine" was a reference to obtaining a new pill press or fentanyl brick press for the Organization. *Id*. When the identified stash house on MacArthur Blvd. in Oakland was searched on July 27, 2022, agents recovered *two* one-kilogram presses commonly used to press drugs into brick form as well as various drugs pressed into "bricks" consistent with being packaged by the "kilo press." PSR ¶ 16. One of the two pill presses appeared new, consistent with the defendant and Mancia-Murillo successfully following through with their plans.

| Kilogram press with drug residue | Recovered bricks of fentanyl |
|---|---|
|  |  |

The investigation also identified Mancia-Murillo coming to and from the MacArthur stash house with co-defendant Angel David-Rodriguez. And, the wire intercepts identified co-defendant Abraham Cruz-Arteaga as a co-conspirator who worked with Mancia-Murillo to distribute the drugs on behalf of the defendant. In sum, the intercepted phone calls identified the defendant as a leader of this Organization, with Mancia-Murillo as a "middleman," Cruz-Arteaga as a purchaser who would resell drugs on the street and Angel Rodriguez as someone who picked up and delivered drugs to Mancia-Murillo. PSR ¶ 13.

On July 27, 2022, agents obtained and executed search warrants at the MacArthur stash house as well as identified residences for the defendant, Mancia-Murillo, Cruz-Arteaega and Angel Rodriguez. PSR ¶ 14. At the 259 MacArthur Boulevard residence, agents recovered a rifle loaded with a 9mm magazine with no rounds of ammunition; approximately six to seven kilograms of fentanyl; two one-kilogram presses commonly used to press drugs into brick form; and numerous ounce-sized bags

containing colored fentanyl, mannitol (a known cutting agent for fentanyl), and dye used to add color to narcotics. PSR ¶ 16. At the defendant's home on 38th Avenue in Oakland, two small baggies of fentanyl were also recovered. PSR ¶ 19.

The defendant was arrested at his home and brought to federal court for his initial appearance on the filed criminal Complaint charging him for his involvement in a conspiracy to distribute drugs and his illegal use of a communications facility.

### III.    SENTENCING RECOMMENDATION

The government agrees that Rodriguez-Cartagena is responsible for the fentanyl found inside the stash house on MacArthur. PSR ¶ 20. The government agrees that the total amount of fentanyl attributable to Rodriguez-Cartagena is under 12 kilograms, placing him under within the parameters of U.S.S.G. §2D1.1(a)(5) and (c)(3). As a result, the Base Offense Level is properly calculated at 34. PSR ¶ 26. As discussed in more detail below, the government believes a 2 point enhancement for being an organizer, leader, manager or supervisor pursuant to U.S.S.G. § 3B1.1(c) should apply to Rodriguez-Cartagena. *Id.* ¶ 29. The government agrees that Rodriguez-Cartagena should be provided a three-level reduction pursuant to U.S.S.G. § 3E1.1(a) for acceptance of responsibility. *Id*. ¶¶ 33, 34. The government further agrees that Rodriguez-Cartagena has a criminal history score of 4 placing him in Criminal History Category III. *Id.* ¶¶ 40, 42.

Based upon a total offense level of 33 and a criminal history category of III, the guidelines imprisonment range is 168-210 months. The plea agreement entered into by the parties, and submitted to the Court, suggests that the appropriate sentencing range in this case is 60 months to 108 months.[1] The reasons for that downward departure, as well as the government's sentencing recommendation within the suggested guidelines range, are discussed in what follows.

**A. Applicable Law**

The Court must impose a sentence sufficient, but not greater than necessary, to reflect the seriousness of the offense, deter others from committing similar crimes, protect the public from the

---

[1] As noted previously, the plea agreement in this case was entered pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure as the parties believe the proposed sentencing range, although below the guidelines, reflect an appropriate disposition of this case.

UNITED STATES' SENTENCING MEMO.          5
CR 22-391 WHO

defendant, and rehabilitate the defendant.  18 U.S.C. § 3553(a)(2); *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008).  Section 3553 sets forth several factors that the Court must consider in determining a just sentence: (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the purposes of sentencing; (3) the kinds of sentences available; (4) the Guidelines range for sentences; (5) any pertinent policy statements; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any victims of the offense.  18 U.S.C. § 3553(a); *Carty,* 520 F.3d at 991.  The Guidelines should be the starting point and the initial benchmark.  *Gall v. United States*, 552 U.S. 38, 49 (2007).  Though the guidelines are not binding, they "reflect a rough approximation of sentences that might achieve section 3553(a)'s objectives."  *Rita v. United States,* 551 U.S. 338, 350 (2007).

**B. Contested Offense Characteristics**

Under U.S.S.G. §3B1.1(c), Rodriguez-Cartagena should receive a two-level enhancement because he was an organizer, leader, manager or supervisor of the drug trafficking activities of this Organization.  A role adjustment is warranted if the defendant exercised "some degree of control or organizational authority over others." *See United States v. Mares-Molina*, 913 F.2d 770, 773 (9th Cir. 1990).  Put more specifically, "the defendant must have exercised some control over others involved in the commission of the offense or he must have been responsible for organizing others for the purpose of carrying out the crime.  This requirement is implicit in the terms 'organizer, leader, manager and supervisor,' each of which suggests the presence of underlings or subordinates." *United States v. Mares-Molina*, 913 F.2d 770, 773 (9th Cir. 1990) (quoting *United States v. Fuller*, 897 F. 1217, 1220 (1st Cir. 1990)).

In the instant offense, Rodriguez-Cartagena very clearly exercised control over his co-defendants.  As the wire intercepts made clear, the defendant directed Mancia-Murillo to collect payment, prepare drugs and purchase a new "machine" for their operations.  PSR ¶¶ 12, 13.  The DEA's failure to physically see the defendant at the MacArthur stash house is evidence of his role as a removed leader who tried to insulate himself from the day to day activities of his operation in order to avoid detection by law enforcement.  Unfortunately for the defendant, the wire intercepts painted the true

picture. And the physical evidence recovered on July 27, 2022 further corroborated the defendant's role. As previously noted, the DEA recovered what appeared to be a new pill press at the stash house, consistent with the defendant's phone conversations with Mancia. Moreover, the DEA uncovered a full blown drug distribution center – a home with large amounts of drug, cutting agents, weapons and presses. The defendant's phone intercepts suggest he was the driving force behind his co-defendants' actions in maintaining this property.

For these reasons, the two-point enhancement for occupying an aggravating role should apply.

### C. Justification for Downward Departure

The government agrees that there are circumstances that merit consideration by this Court pursuant to 18 U.S.C. § 3553(b)(1) and justify a downward departure from the applicable guidelines. Namely, Mr. Rodriguez-Cartagena's criminal history score is in part due to a 2017 conviction for illegal re-entry when he was 23 years old. PSR ¶ 44. Because two of his four criminal history points are for this conviction, the government agrees that a Criminal History Category III overstates the defendant's criminal history. Additionally, had all of the co-defendants in this matter pled guilty through agreements with the government, like the defendant, the government was willing to extend a further two-point reduction under U.S.S.G. §5K2.0(a)(2)(b) because of the significance of four defendants accepting responsibility in lieu of trial or potential appellate litigation.

Even more, Mr. Rodriguez-Cartagena's difficult circumstances in Honduras, including having to work to support his family in just the sixth grade, and often not having enough food to eat or enough clothes (*see* PSR ¶ 55), paint the picture of a man who was not afforded the same opportunities as others. Because of his citizenship status, the defendant is also likely to be removed from the United States as a result of his conviction for his conduct in this case. And, as noted in the Presentence Report, the defendant's family is likely to join him in Honduras when he is deported after serving his time on this case, providing him incentive to remain in Honduras and rebuild his life after serving his sentence. PSR ¶ 59.

Because of these factors, the government believes an appropriate guidelines range in this case is 60 to 108 months (5 years to 9 years imprisonment). Although this range is below the calculated

guidelines, it accounts for the defendant's criminal history, pretrial admission in a complicated, co-defendant matter, and factors in his specific circumstances. More to the point, a sentence within this range should adequately deter Mr. Rodriguez-Cartagena from re-offending and provide just punishment for the offense.

### D. Recommended Sentence Within Suggested Guidelines Range

The government believes the Court should sentence Mr. Rodriguez-Cartagena to the high end of the recommended guidelines range – 9 years. Although there are mitigating factors that should be considered, the astonishing quantity of drugs found in the Organization's stash house suggests the defendant had created a professional, profitable distribution business that preyed on the citizens of the Bay Area. Fentanyl is a highly deadly drug that has had a major impact on the streets of our community. The defendant made a decision to work with others to store, package and distribute this drug, full well knowing that this dangerous product would make its way to users.

From a deterrence standpoint, it is important to point out that the defendant was prosecuted in 2016 and 2020 for drug dealing (PSR ¶¶ 44, 39), removed from the United States on at least two prior occasions (PSR ¶ 38), and was on pretrial release for a drug trafficking case in state court (PSR ¶ 45). Very clearly, prior judicial intervention has done very little to deter the defendant from reverting to a career as a drug trafficker and continuing to break the law. A substantial period of incarceration is necessary to stop the defendant's course of conduct and make it clear to the community that those who contribute to the blight facing San Francisco by participating in the Bay Area drug trade will be seriously punished. The defendant's willingness to victimize the community, and his blatant disregard for the law, justifies a substantial custodial sentence.

For these reasons, the government believes that the Court should accept the proposed plea agreement terms but impose a sentence consistent with the high end of the suggested guidelines. A sentence of 108 months imprisonment adequately serves the factors laid out in 18 U.S.C. § 3553.

//
//
//

## IV. CONCLUSION

The government respectfully recommends that the Court sentence Mr. Rodriguez-Cartagena to a sentence of 108 months' (9 years) of imprisonment on Count One. The government also requests that the Court impose a three-year term of supervised release, with each of the terms and conditions recommended by U.S. Probation.

DATED: August 1, 2024

Respectfully submitted,

PATRICK D. ROBBINS
Attorney for the United States

　/s/
CHARLES F. BISESTO
Assistant United States Attorney